The Equitable Guarantee and Trust Co., Trustee,. Appointed by the Chancellor under the Last Will and Testament of Theodore Rogers, Deceased, *v.* Mary N. Rogers, Annie R. du Pont, Theodore B. Rogers, and Helen R. Bradford.

New Castle, September Term, 1895.

**Rights of life tenants and remaindermen in trust estates,. to accumulations and income of the estate up to and after the period fixed for division of the estate; Construction of wills; General intent and particular intent appearing in the will; Definition of the word "accumulations" as used in a will.**

1. Whenever upon the face of a will, two intents are manifest, the one general and for a general period, and the other particular, for a particular period and a particular portion of the estate, the two are not held as conflicting, but the latter is to be taken as an exception to the former.

2. A testator devised all his estate to trustees in trust to hold all the rest and residue of his estate (after reserving as much of the securities as they might deem necessary to raise a certain annuity for his widow) in trust to apply so much of the income thereof as they might deem proper to the support and education of his children during their minority, and in trust when his first child should attain the age of twenty-one years, to divide his residuary estate into so many shares as there were children at the time of the division; and as the children arrive respectively at their majorities, to pay over to them respectively the income of their respective shares of his estate for the term of their natural lives, etc. In section 7 of the will, the following occurs: " I hereby declare that my said executors " (trus-

tees) " shall stand possessed of the accumulations of my residuary estate and the income thereof, upon and for the same trusts and subject to the same declarations hereinbefore made concerning the estate from which such accumulations shall have proceeded."

a. Held, that the accumulations, enhancements and increase in certain stocks forming a part of the estate from the death of the testator up to the majority of the eldest child, the period fixed by the will for the division, were to be treated as a part of the *corpus* or capital of the estate and subject to the declaration of trust, and not as income to be paid to the children absolutely.

b. But held also, That such accumulations, enhancements and increase on the share of the youngest child from the majority of the eldest to her own majority, would go absolutely to her as income.

c. Held also, That all excess in the amount reserved by the trustees for the raising of the widow's annuity over and above what was necessary, was a part of the *corpus* or capital of the estate, and not income.

d. Held also, That the word " accumulations " as used in section 7 would cover the yearly earnings and profits of a corporation in which the testator held stock, in whatever form they might exist, which had not been distributed in dividends among the owners of the stock at the time it went into liquidation.

Bill for Instructions.— The facts in this case are stated in the first part of the opinion of the Chancellor.

W. C. Spruance and C. M. Curtis, for complainants.

The questions raised in this cause are:

First. Are the daughters of the testator entitled to have paid to them the income from the trust estate re-

ceived by the trustee in excess of the annuity to Mrs. Rogers, or is such excess to be held as part of the principal of their trust estate?

Second. Are the various sums of money and securities received by the trustee upon the shares of stock of the Rogers Locomotive & Machine Works to be held by the trustee as part of the principal or part of the income of the trust fund?

The contention of the trustee upon the second question is, that all the moneys and securities received upon the shares of stock of the Rogers Locomotive & Machine Works since February 15, 1893, and to be received hereafter, are to be treated as part of the principal or capital sum of the trust fund, and not as income, and for the following reasons:

(a) Because they were all apportionments made to shareholders as divisions of assets of a corporation which had ceased to do business, had sold all its plant and property, and was in the process of liquidation preparatory to final dissolution.

(b) Because the amount so distributed consisted partly of accumulated earnings and undivided profits which had been capitalized by the company, and must, therefore, continue to be capital or principal.

(c) Because nearly one-half of the amount so distributed consisted of a consideration received upon the sale of the plant, and all real and personal property, contracts and good-will of the company, which was clearly capital or principal.

(d) Because the resolution of the stockholders and the several resolutions of the directors of the company showed that in substance and intent it was not a division

of earnings, profits, or income as such, but an apportionment and distribution of all its property as capital.

(e) Because a distribution made and to be made upon the stock is in exchange and substitution for the shares, and, therefore, is to be treated as principal, the shares being part of the principal of the trust estate.

(f) Because the evident intention of the testator was to make all such distribution part of the principal of his estate.

A division of the assets of a corporation which has ceased to do business and sold its plant and all its property, and is in process of liquidation, preparatory to a final dissolution, is a distribution of capital, and the distribution received by a trustee holding shares of stock become part of principal and not the income of the trust estate. 1 Morawetz on Private Corporations, §§ 443, 467; Gifford v. Thompson, 115 Mass. 478; Richardson v. Richardson, 75 Me. 570.

If a corporation has used the whole or a part of its earnings or profits to extend its business, increase and renew its plant and business operations, or to purchase securities, land, or other property, it has thereby capitalized or fused into capital such earnings or profits, and they will continue to be capital when the corporation goes into liquidation preparatory to dissolution and distributes such accumulations. Gibbons v. Mahan, 136 U. S. 549; Irvine v. Houston, 4 Pat. Sc. App. 521; In re Barton's Trust, L. R. 5 Eq. 238, 243, 245; Bouche v. Sproule, L. R. 12 App. Cas. 385; Spooner v. Philips, 62 Conn. 62; In re Smith's Estate, 140 Penn. St. 344; Vinton's Appeal, 99 id. 434; Davis v. Jackson, 25 N. E.

Rep. (Mass.) 21; In re Brown, 14 R. I. 371; Minot v. Paine, 99 Mass. 101.

If a corporation makes sale of all its real and personal property, including its plant, contracts, good-will, and business, and distributes the proceeds among its stockholders, such distributions are held to be capital. Wheeler v. Perry, 18 N. H. 304; Heard v. Eldridge, 109 Mass. 258; Clarkson v. Clarkson, 18 Barb. 648; Vinton's Appeal, 99 Penn. St. 434; Wheeler v. Perry, 18 N. H. 307.

The method and terms by which the officers of a corporation exercise their discretionary powers with respect to the distribution or retention of the profits or earnings of a corporation determine the destination of such distribution, whether to the life tenant or remainderman. In a word, what the company says is income is income, and what it says is capital is capital. Sproule v. Bouche, L. R. 12 App. Cas. 385; In re Kernochan, 104 N. Y. 628.

If a corporation in the process of liquidation with a view to final dissolution distributes assets among its stockholders, and the amount so divided is so indorsed on the certificates of stock of the shareholders, such payments will be deemed to be made of capital or principal and not income as between the life tenant and remainderman.

The intention of the testator must control the distribution of the funds in question as principal.

George Gray and H. H. Ward, for respondents.

The main questions raised by the bill of complaint and the answer are:

First. Whether or not Mrs. Du Pont and Mrs. Brad-
ford are entitled to have now paid over to them their
respective one-third shares of all excess of income above
the $5,000 annuity, and proper expenses of that part
of the trust which in the past has come into the hands
of the several trustees under the will, arising from the
securities and funds set apart and held by the said trus-
tees to raise and secure said annuity prior to the order
of this court of the 2d day of December, 1893.

And as a question subsidiary to the foregoing, whether
this court will not direct an inquiry by some proper
method to ascertain the total amount of such excess of
such income heretofore withheld from these defendants.

Second. Whether any or all of the special dividends
or bonuses declared by the Rogers Locomotive & Ma-
chine Works out of its treasury assets, as enumerated
in the fifth paragraph of the amended answer of these
defendants, are income or capital of the trust in Theo-
dore Rogers' will; and, therefore, whether these defend-
ants should have their respective one-third shares of
such dividends now in hand paid to them, or whether
such dividends should be capitalized and only the in-
come thereof paid to these defendants for life.

During the minority of the first child of the testator,
the children were entitled to equal shares of the income
of the residuary estate, although the executors are given
a discretion as to how much of said income shall be
applied to the support and education of the children
during their minority. This equality of interest is
clearly indicated by the manifest intent throughout the
will that his children should have equal shares in his

estate.    The rule of law is also clear.    Jones v. Foote, 137 Mass. 543.

After the majority of the testator's first child, the capital itself of the residuary estate is directed to be divided equally into as many shares as the testator has children and the income of such shares from that time goes to the several children.

In this will there is a bequest of the income of shares in the residue to these daughters for life, with remainder over of the capital; they are, therefore, entitled as such lifetenants to such income from the death of the testator. Williams on Exrs. 1390, 1392, and note L; Williamson v. Williamson, 6 Paige, 298, 304; Augerstein v. Martin, 1 Turn. & R. 232; Hewitt v. Morris, id. 242; Douglas v. Congreve, 1 Keen. 410, 428; Hilyard's Estate, 5 W. & S. 32; Lamb v. Lamb, 11 Pick. 371, 378; Minot v. Amory, 2 Cush. 377, 387-389; Lovering v. Minot, 9 id. 151, 156; Lawrence v. Security Co., 56 Conn. 423.

There appears in this will no direction to capitalize the income, received by the executors during the minority of the testator's children, in excess of what they might " deem proper " to apply to the support and education of such children.    Neither does there appear to be a disposition of such excess of income to or for the use of any other person than such children.    It will be presumed in the absence of a contrary intent on the face of the will, that the children of the testator, as life tenants, were the primary objects of his care, rather than · the remaindermen of the fund.    The right, therefore, of these defendants to the whole income of their shares during their respective life estates joined with the factors

just noted, entitled them to have had paid them, upon their respective majorities, the entire excess of income of their shares above the expenditures made by the executors for their support and education.     Penrose's Appeal, 102 Penn. St. 448; Farley v. Bucklin, 17 Atl. Rep. (R. I.) 132; Williams v. Bradley, 3 Allen, 270-285; Riggs v. Cragg, 26 Hun, 89.

It appears by the terms of the will that the testator intended to give the trustees an absolute discretion as to the conversion of his estate; in such a case, the court will not order sale, except in cases where the condition of the estate demands it, and the tenant for life may have the actual income of the unconverted assets. Lewin on Trusts, 290, 298, 304, 613; Re Sewell's Trusts, 11 L. R. Eq. Cas. 80; Eldredge v. Head, 106 Mass. 582; Miller v. Miller, 13 L. R. Eq. Cas. 263; In re Norrington, 13 L. R. Ch. Div. 654, 664, 665; Wrey v. Smith, 14 Sim. 202; Massey et al. v. Stout et al., 4 Del. Ch. 287.

Section 7 of the will provides that the executors shall stand possessed of the accumulations and income of the residuary estate for the same trusts as the *corpus*.

But, accumulation means the adding of income or interest to capital.     Douglas v. Congreve, 1 Keen. 428.

Nowhere else in the will is mention made of accumulations, but even if this section is laid particular stress upon, it must be noted that such at most implied direction to accumulate, fixes no period during which such accumulation shall continue, and that the period for such accumulation will, under these circumstances, be limited by the court to one year after the testator's decease.     Sitwell v. Bernard, 6 Ves. 520, 522, 527, 540-

543; Entwistle v. Markland, id. 527, 540, 541; Vigor v. Harwood, 12 Sim. 172, 173, 177; Tucker v. Boswell, 5 Beav. 607; Stair v. Macgill, 1 Bligh (N. S.), 662, 683; Parry v. Warrington, 6 Madd. 156.

Where trustees under a will hold, as a part of the estate of a testator, stock in an incorporated company, in trust to pay the income thereof to certain persons for life, with a remainder over of the stock absolutely, or otherwise, after the decease of the life tenant, the persons so entitled to the income of said stock for life are, as between them and the remainderman of the stock, entitled to have and receive all dividends of said company, declared during their lifetime out of the earnings and profits of such company, and all dividends of every description whatsoever, declared during their lifetime, which do not impair the fund or capital which originally came into the hands of such trustees to hold for the purposes aforesaid. Under such conditions, it is wholly immaterial that such dividends represent earnings of such company collected in its treasury through an indefinite period; or that they had been withheld from the stockholders of the company prior to such dividends for a reserve fund, or for general purposes of the company, in accordance with any policy of the company, or that they are extraordinary in amount. It is also wholly immaterial whether such dividends are made in cash, or in the stock, bonds or certificates of indebtedness of other companies held by the dividend-declaring company, or even in the stock, bonds or certificates of indebtedness of the dividend-declaring company itself; the sole questions involved being whether the dividends are declared out of the earnings or profits of the com-

pany, and whether the original capital fund, primarily
coming into the hands of the trustees to hold as afore-
said, was thereby impaired.    Barkley v. Wainewright,
14 Ves. Jr. 66; Price v. Andersen, 38 Eng. Ch. Rep. (15
Sim.) 473; Preston v. Melville, 39 id. (16 Sim.) 163;
Johnson v. Johnson, 5 Eng. L. & E. Rep. 164; Maclaren
v. Johnson, 3 DeG., F. & J. 202; In re Hopkins Trust,
18 L. R. Eq. Cas. 696; Lord v. Brooks, 52 N. H. 72;
Earp's Appeal, 28 Penn. St. 368; Wiltbank's Appeal, 64
id. 256; Moss' Appeal, 83 id. 264; Reed v. Head, 6 Al-
len (88 Mass.), 174; Leland v. Hayden, 102 Mass. 542;
Harvard College v. Amory, 26 id. 446; Balch v. Hallett,
76 id. 402; Van Doren v. Olden, 19 N. J. Eq. 176;
Ashurst v. Field's Admr., 26 id. 1; Clarkson v. Clark-
son, 18 Barb. 646; Simpson v. Moore, 30 id. 637; In re
Kernochan, 104 N. Y. 618; Woodruff's Case, 1 Tuck.
58; Millen v. Guerrard, 67 Ga. 284; Richardson v. Rich-
ardson, 75 Me. 570.

The testator died in 1871, possessed of the stock in
question, and it has been continuously held by trustees
under his will for the last twenty-three years.    There
is no claim in the bill of complaint of this trustee, now
complainant, that a single penny of the surplus earn-
ings of this company heretofore distributed, or here-
after to be distributed, by way of dividends, was earned
by the company or carried to an account of accumulated
profits or surplus earnings, before or at the time of tes-
tator's death.    No basis for any inquiry into the ques-
tion of how much, if any, of these surplus earnings were
collected in the treasury of the company prior to the
testator's death, appears upon the pleadings.    The court
will not direct an inquiry which, owing to the lapse of

time, would probably be fruitless, and especially when no basis for such an inquiry appears upon the pleadings. No case can be cited in which the court directed such an inquiry after anything like such a lapse of time; while, on the other hand, there are many cases in which the time, and hence the difficulty, was much less where the courts have not directed such inquiry. Price v. Andersen, 36 Eng. Ch. Rep. (15 Sim.) 473; Barkley v. Wainewright, 14 Ves. Jr. 66; In re Hopkins' Trust, 18 L. R. Eq. Cas. 696; Maclaren v. Stainton, 3 DeG., F. & J. 202; Balch v. Hallett, 76 Mass. 446; Ashurst v. Field's Admr., 26 N. J. Eq. 1; In re Kernochan, 104 N. Y. 618; Woodruff's Case, 1 Tuck. 58; Millen v. Guerrard, 67 Ga. 284; Richardson v. Richardson, 75 Me. 570.

A corporation is the owner of all the property in its possession, including surplus undistributed profits, and may do with such property as it chooses. Until a dividend is declared, the stockholder, as such, has no title to the money covered by such dividend. The action of the corporation alone determines its character as a dividend, since it alone has the right to order its division as profits. Consistently with this principle, a court may rest upon the determination of the character of the dividend, made by the corporation, and refuse to direct an inquiry into the sources of the dividend, or when it was actually earned. Price v. Andersen, 38 Eng. Ch. Rep. (15 Sim.) 473; In re Hopkins' Trust, 18 L. R. Eq. Cas. 696; Maclaren v. Stainton, 3 DeG., F. & J. 202; Lord v. Brooks, 52 N. H. 72; Harvard College v. Amory, 26 Mass. 446; Balch v. Hallett, 76 id. 402; In re Kernochan, 104 N. Y. 618; Millen v. Guer-

rard, 67 Ga. 284; Richardson v. Richardson, 75 Me. 570.

It appears from the testimony that the Rogers Locomotive & Machine Works began business in 1856, with capital stock of $300,000, which was not increased, and, after paying regular semi-annual dividends, accumulated from time to time property which it invested in rebuilding, improving the plant and fixtures, in carrying on the business, in railroad securities, land, bills receivable, etc.    These moneys, investments and securities were used in the conduct of its business.

The president and directors of the company say that these accumulations were never changed into capital, and say that all the assets in excess of the capital stock had always been treated as accumulated profits.    But they say that it is impossible to state what was the amount of such accumulation in 1871, or in 1893, or at the present time; that the divisions of assets among its stockholders since February 15, 1893, were made in course of liquidation preparatory to final dissolution, and that the division of 100 per cent. in cash made pursuant to the resolution of March 16, 1893, was exclusively from capital, and all others were from profits.

As to the value of the stock in 1872, Jacob S. Rogers says it is impossible to state what it was, as it had not then, and never has had any market value, and it was equally impossible to make a valuation at or about February 15, 1893, or at the present time.    But it is clearly stated that each of the divisions of assets had diminished the value of the shares, and that when the division of all the assets shall be completed, the stock will be valueless.

It appears that all the payments and divisions made to and among the stockholders since February 15, 1893, were noted by the company on the backs of the certificates of stock for 250 shares, held by the trustee, as shown by the following indorsement:

" The holder of this certificate has received in the winding up and dissolution of the herein named corporation, the following assets:

1893.

May 23. 1,000 per cent. in stock of Rogers
          Locomotive Company ....... $250,000

May 23. 100 per cent. in cash, being the
          amount of principal or par of
          the stock ................. 25,000

May 23. 75 per cent. in N. Chatt. & St. L.
          $187\frac{1}{2}$ shares.

May 23. 60 per cent. in Louisville & Nash.
          150 shares.

May 23. 40 per cent. in Ills. Cent. Leased
          lines, 100 shares.

May 23. 100 per cent. in cash............ 25,000

May 23. 100 per cent. in cash............ 25,000

May 23. 100 per cent. in cash............ 25,000

June 19. 100 per cent. in cash............ 25,000

July 12. 100 per cent. in cash............ 25,000

July 26. 100 per cent. in cash............ 25,000

Aug. 8. 100 per cent. in cash............ 25,000

1894.

Sept. 26. 100 per cent. cash on
167 shares ........ $16,700
(a) Sept. 26. 100 per cent. cash
on 83 shares....... 8,300
——— $25,000

Sept. 26. 144 1-12 per cent. on
167 shares in shares
of Rogers Locomo-
tive Co., 240½ shares, $24,050
(b)Sept. 26. 144 1-12 per cent. on
83 shares in shares
of Rogers Locomo-
tive Co., 119½ shares, 11,950
——— 36,000."

The above items marked (a) and (b) were not received
by the complainant as trustee, but as attorney of Theo-
dore B. Rogers, who was the owner of the above-men-
tioned 83 shares.

The Rogers Locomotive & Machine Works has al-
ready distributed to its stockholders in the process of
liquidation, $6,100,000, which is more than 2,000 per
cent. on its capital stock of $300,000, and there are still
assets to be divided.

The following is a partial statement of the assets of
the company on or about February 15, 1893, as shown
by the amounts already distributed to the stockholders:

| | |
|---|---:|
| Plant sold to Rogers Locomotive Company, | $2,750,000 |
| Cash divided in 10 installments of 100 per cent. each ........................ | 3,000,000 |
| Stocks divided, valued at .............. | 350,000 |
| | $6,100,000 |

It appears that the present trustee has already received from the Rogers Locomotive & Machine Works, the following cash and securities as its shares of the divisions made in liquidation:

| | | |
|---|---:|---:|
| Cash, 9 payments, each $25,000, $225,000 | | |
| Cash, 1 payment ............. | 16,700 | |
| | | $241,700 |
| Stock Rogers Locomotive Co., 2,500 shares; stock Rogers Locomotive Co., 240½ shares; 2,740½ shares, at $100.......... | | 274,050 |
| Stock N. C. & St. L. R. R., 187½ shares, at $70 ........................... | | 13,125 |
| Stock L. & N. R. R. Co., 150 shares, at $52 ........................... | | 7,800 |
| Stock Ill. Cent. R. R. Co., etc., 100 shares, at $88 ........................ | | 8,800 |
| | | $545,475 |

The trustee has paid and transferred to Theodore B. Rogers his share under the will of all the securities and moneys received on the stock of the Rogers Locomotive & Machine Works, the shares of the sons of the tes-

tator being payable to them absolutely on attaining twenty-one years of age.

The present trustee has received from admitted income up to November, 1893, the sum of $6,141.43, in excess of what was sufficient to pay the annuity of $5,000, and the expenses of the trust, and one-third of this sum has been paid to Theodore B. Rogers, one-third carried to the principal accounts of Helen R. Bradford and Annie R. du Pont, respectively. Since that time, such excess of income has been paid in equal parts to the three children of the testator, pursuant to the order of the Chancellor, made December 2, 1893.

Wolcott, Chancellor.— Theodore Rogers, late of New Castle Hundred, in New Castle County, and State of Delaware, died during the month of October, A. D. 1871, having first made and published his last will and testament, bearing date the 14th day of January, A. D. 1867, which was duly admitted to probate by the register of wills in and for said county. The testator, by his will, appointed his three brothers — Jason Rogers, Jacob S. Rogers and Columbus B. Rogers — executors and trustees thereunder. Letters testamentary were in due form of law issued unto Jacob S. Rogers and Columbus B. Rogers, the surviving executors under said will, who accepted the trust therein created, the said Jason Rogers, the other executor, having predeceased the testator.

By said will, the testator gave, bequeathed and devised all his estate, real, personal and mixed, whether in the State of Delaware or elsewhere, now in possession or hereafter to be acquired, unto his said three

414        E. G. & T. Co. *v.* Rogers et al.    Sept. T..

Opinion.

brothers, the survivor or survivors of them, subject to the following uses, purposes and trusts:

1st. In trust, to hold his mansion, farm and all the personal property situated thereon, for the sole use and benefit of his wife, for the term of her natural life, or during widowhood, and after her death, or marriage,. for the use of his son, Theodore B. Rogers, until he shall have attained his majority; and so soon as he shall arrive at the age of twenty-one years, or if he shall have arrived at the age of twenty-one years when the marriage or death of his said wife occurs, then to grant, convey and deliver the same to his said son, Theodore B.. Rogers, absolutely; but, if after the marriage or decease of his said wife, his said son shall die before arriving at the age of twenty-one years, then the same to fall into his residuary estate, and. if his said wife shall survive his said son, then at her marriage, or death, the same shall fall into and become a part of his residuary estate.

2d. In trust to pay each and every year out of the income of his estate, to his wife, Mary N. Rogers, so long as she shall live and remain his widow, the sum of $5,000, to be paid to her in two equal semi-annual payments; the first payment to be made within six months after his death. And after the marriage, or decease, of his said wife, so much of the capital of his estate as may have been held to answer said annuity, shall also fall into and become a part of his residuary estate.

3d. In trust to hold all the rest and residue of his estate, under and subject to the following interests, purposes and trusts, that is to say, in trust to apply so much of the income thereof as the trustees may deem proper to the support and education of his children, and the

issue of any deceased child or children, during their respective minorities.

4th. In trust, when his first child shall have attained the age of twenty-one years, to divide his residuary estate, which he defines to be " his whole estate," except that portion thereof devised in the first section of his will for the use of his wife, Mary N. Rogers, and his son Theodore B. Rogers, and, except further, such principal or capital sum as may be sufficient to produce the yearly bequest given and granted to his said wife, if she shall then be his widow, into so many parts or shares as there may be children and deceased children leaving lawful issue, at the time of the division. The testator then directed as follows:

"And as my daughters respectively arrive at twenty-one years, to pay over to them respectively the income of their respective shares of my estate, for and during their natural lives, upon their own receipts only, and for their separate use and benefit, free from the control of any husband; the payments to be made annually, or oftener, as the same may become due."

Then follows a limitation over after the decease of any of his daughters, to such uses as she shall by will appoint, and in default of such appointment, to distribute her share among her children, etc.

By item 6th, he ordered his executors, in their discretion, to convert into money, any of his residuary estate, real or personal, and reinvest the same in certain prescribed securities.

Item 7 provides as follows:

" I hereby declare that my said executors shall stand possessed of the accumulations of my residuary estate

and the income thereof, upon and for the same trusts and subject to the same declarations hereinbefore made concerning the estate, or part or share of my estate, from which such accumulations shall have proceeded."

Item 8 is as follows:

" I declare that if any portion of my estate shall fall into and become a part of my residuary estate, after the period of division mentioned in section 4, then the same shall be subject to division and distribution, and held and assigned in like manner and for the same uses as are declared concerning the other part of my residuary estate."

The testator left to survive him a widow, Mary N. Rogers, who is still living and unmarried, and three children, namely, Annie R. du Pont, Theodore B. Rogers and Helen R. Bradford, all of whom are still living and over twenty-one years of age.

On the 4th day of May, A. D. 1879, Annie R. du Pont, the eldest child of the testator, arrived at her majority, and the trustees, pursuant to the authority contained in item 4 of the will, divided certain of the funds and securities, and transferred to themselves, as trustees for each child, the cash and securities allotted to each one.   They retained the following securities to raise the annuity for the widow:

Two hundred and fifty shares of the Rogers Locomotive & Machine Works, par value, $25,000, inventoried at $31,000.

Three hundred and thirty-four shares of the Patterson & Hudson R. R. Co., par value, $15,700, inventoried at $15,700.

Three hundred and sixty-three shares of Patterson & Ramapo R. R. Co., par value, $18,150, inventoried at $18,150.    Aggregate appraised value, $64,850.

They also retained the balance of the securities, amounting to $135,477.50, under the general trust of the will.

On April 16th, 1891, they made a second division of cash and securities among the children of the testator, the trust estate having greatly increased in value by the accumulations of income, and the enhancement in the value of the investment, and retained for the general trust the three securities above named, which, in the opinion of the trustees, were then worth $552,275, the stock of the Rogers Locomotive & Machine Works being estimated by them to be worth $500,000.

On June 20th, 1891, upon their own petition, Jacob S. Rogers and Columbus B. Rogers relinquished the trusteeship, and the Equitable Guarantee & Trust Co. was appointed trustee, and the above-mentioned securities were transferred to the new trustee.

The Rogers Locomotive & Machine Works made regular semi-annual cash dividends from 1872, to January, 1893, of 10 per cent., except from July, 1876, to July, 1883, when the dividends were 5 per cent. semi-annually.

At a meeting of the stockholders of the Rogers Locomotive & Machine Works, held February 15th, 1893, it was resolved:

" That it is the sense of this meeting that the offer of Robert S. Hughes be accepted, and that the board of directors proceed to make sale of the plant in accordance

27

with the details and particulars specified in a memorandum of sale and schedule presented by the president of this meeting, and that the board of directors be authorized to accept the sum of $2,750,000 in the common stock of the Rogers Locomotive Company, in payment of said property.

"That upon the sale being made, as in the former resolution, the directors proceed to wind up and dissolve the corporation pursuant to the charter."

The schedule referred to in the above-quoted resolution included a very large amount of land, buildings, boilers, machinery, tools, materials on hand, water rights, good-will, contracts and orders on hand, drawings, patterns, and all personal property on the land of the company. It included every asset of the company, except cash and securities on hand, and bills receivable, and debts due and owing to the company.

The sale of the plant was subsequently consummated, the company ceased to do business, and proceeded to wind up its affairs preparatory to a final dissolution.

On March 7th, 1893, the directors resolved, that a dividend be made to the stockholders, of ten shares of Rogers Locomotive Company, on every share of the stock of the Rogers Locomotive & Machine Works, and pursuant to this, the trustee received twenty-five hundred shares of stock of Rogers Locomotive Company, par $100.

On March 16th, 1893, the directors resolved,

"That a division be made of 100 per cent. of the cash assets, being the amount of the principal or par of the stock." Pursuant to which, the trustee received $25,000 in cash.

On March 27, 1893, the directors resolved,

" That a division be made to the stockholders of the following assets in kind:

Seventy-five per cent. in stock of Nashville, Chattanooga & St. Louis Railway Co.

Sixty per cent. in stock, Louisville & Nashville R. R. Co.

Forty per cent. in stock, Illinois R. R.'s leased lines."

All of which the trustee in due course of time received.

At eight other times, from April 3d, 1893, to November 13th, of the same year, the directors of the Rogers Locomotive & Machine Works adopted the following resolution:

"*Resolved,* That a further dividend or division of the assets in liquidation be made of 100 per cent. in cash and 144 1-12th per cent. in stock of Rogers Locomotive Co." Pursuant to which the trustee received $16,700 in cash, and 240½ shares in stock of Rogers Locomotive Company.

All the payments, dividends and divisions made to the stockholders since February 15th, 1893, were indorsed on the certificates of 256 shares of stock in the Rogers Locomotive & Machine Works.

It having become very evident that the cash and securities received by the trustee, and by it held for the purposes of the general trust, were far in excess of what was necessary to raise the annuity of $5,000 for the widow, the trustee filed a bill for instructions as to the distribution of such excess.

On the 2d day of December, A. D. 1893, the court, by consent of the solicitors for the complainant and de-

fendants, and without prejudice to either party as to the further questions arising under the pleadings reserved for future argument, ordered,

*First.* That $25,000 in cash, and $125,000 in specified securities, should be held by the trustee out of the funds in its possession for the raising and securing an annuity of $5,000, payable under the will of Theodore B. Rogers, to his widow during her life or widowhood.

*Second.* That one-third of the residue of the undivided assets, held by the complainant as trustee, be paid over and transferred to the son of the testator absolutely, under the express terms of the will, and that the excess of income arising from the money and securities so ordered to be held by said complainant for the purpose of raising said widow's annuity, above said annuity, and all expenses attending the execution of said part of said trust, shall be paid over by said trustee as income, in equal shares, to Annie R. du Pont, Theodore B. Rogers and Helen R. Bradford, said testator's children.

One of the questions reserved is, are the two daughters of the testator entitled to have paid to them their respective shares of all excess of income received in ordinary cash dividends, above the annuity of $5,000, arising from the fund set apart and held by the original trustees to raise said annuity prior to the order of this court, December the 2d, 1893, or is it to be held as a part of the principal or *corpus* of their respective trust estates?

To determine this question, it is proper to consider, in the first place, from what period the children of the testator were entitled to a definite share of the income produced by the *corpus* of the trust estate, under the

language in which the trust is expressed. It must be borne in mind that the whole estate of the testator, except certain realty and personalty given in trust for the special use and benefit of the widow and son, and the amount necessary to raise the widow's annuity, was to be held in bulk until the eldest child attained the age of twenty-one years. The income was also to be held in like manner for a like period, subject to the payment thereout of so much thereof as the trustees might deem proper for the support and education of testator's wife and children, or the legal issue of any deceased child or children.

The eldest child, Mrs. du Pont, completed her twenty-first year, May the 4th, 1879, at which time the residuary estate was to be divided into as many shares or parts as there might be children, and deceased children leaving lawful issue at the time of the division, and thereafter the income earned by each of those shares was to be held by the trustees separately, and not thrown into a common fund.

The testator had only three children, all of whom were living at the time the division was to have been made, thus making the fund divisible into three equal parts or shares.

It is immaterial, however, for the determination of this cause whether the whole of the residuary estate was so divided at the period prescribed by the will or not, inasmuch as it comes within the principle, that whatever ought to be done is considered in equity as done. And for the sake of convenience, it may be stated here, that the residuary estate was the whole estate, diminished by the separation therefrom of the portion de-

vised to the widow and son, and so much only as would
be necessary to produce the widow's annuity.   I shall,
therefore, throughout this opinion, treat the excess of
capital held by the trustees for the use of the widow
during her life or widowhood as a part of the residuary
estate, as further on it is more elaborately noticed.

By the admissions and exhibits in this cause, it appears
that the income thus held in bulk exceeded the expendi-
tures in behalf of the support and education of the
children.    Consequently, between the death of the
testator (which occurred in October, 1871) and the
period for division, the annual excesses of income ag-
gregated a large amount.    What that amount now is,
however, is not important to consider, as we are endeav-
oring only to discover the principle by which to deter-
mine its quality; whether capital or income.

The testator evidently contemplated the existence of
an unexpended income, in the hands of the trustee,
every year after they assumed the responsibility of ad-
ministering and executing the several trusts imposed
upon them; but notwithstanding this, he gave no direc-
tion to distribute this excess as income among the chosen
objects of his care and bounty, either before or after
the division.    Neither were the trustees required to
keep it as a separate and distinct fund for any general
or particular purpose, as none was indicated or expressed
in any clause or part of the will.    What object, then,
could there have been in continuing to treat it as in-
come?    None whatever, for the children were amply
provided for up to the period fixed for the division.    If
the testator had survived their minority, he could not
have made a more wise and judicious provision for them

than he did do by his will.   If he had died intestate,
the law would have made the same, certainly no better
provision.   In such case, their guardians would have
been permitted to use only so much of the income as
would have been proper for their support and education.
So that, the testamentary provision made was not in-
compatible either with the tender and generous instincts
of the parent, or the humane provisions of the law.

This excess of income, therefore, being unrestrained
by any express or implied direction of the testator,
obeyed the law or tendency of its nature and fell into
and became a part of the parent or general estate, in
which its identity as income was completely lost.

If the view I have taken needed reinforcement, it
would only be necessary to refer to the language em-
ployed by the testator to describe the whole of his prop-
erty devised and bequeathed in trust to his executors,
for the various purposes subsequently named in his will,
and the language employed by him to describe his re-
siduary estate which he directed to be divided as before
mentioned.   His entire estate, in the clause creating
the general trust, is comprehended under the phrase
" all my estate, real, personal and mixed, whether in
the State of Delaware or elsewhere, now in possession or
hereafter to be acquired."   His residuary estate is de-
fined as, "my whole estate," except that portion thereof
devised in the first section of his will, for the use of his
wife and son, and except, further, such principal or
capital sum as may be sufficient to produce the widow's
annuity.   There is no dispute that the words " all my
estate," as used in the one case, included income as well
as capital.   If so, upon what ground can the words " my

whole estate," as used in the other case, be held to be exclusive of income? — the only difference being in the words " all " and " whole." They are both descriptive of the word " estate," and are equally broad and comprehensive in their import. Any attempt to draw distinction between their natural scope and effect would be a labor devoid of any discoverable aim or end, unless their ordinary signification is modified or varied by other language in the will. As before seen, there is no language in the whole will to so separate the capital from the income, as to require a special mention of both by their technical names, in order to combine or consolidate them into one fund, namely, the residuary estate.

Again, at the time of the execution of his will, the estate of the testator, no doubt, consisted of both capital and income, the respective of which identities were just as capable of ascertainment at that time as at any time after his decease. He used the term " estate " intelligently, intending to embrace therein all his property in whatever form it may have existed, without specifically mentioning the classes and subdivisions of which it was composed, barring the well-known legal distinction between real and personal property. The testator must have known that if an ordinary degree of prosperity continued to attend his business affairs, his estate in the hands of the trustees would, when the period fixed for the division thereof should arrive, consist of both capital and income, just as his entire estate did at the time of the making of his will, whether in the same or in dissimilar proportions. Therefore, if he had intended to restrict the application of the term " estate,"

as used in directing the division of his residuary estate, to capital .alone, or to any particular portion of his property, the unavoidable presumption is that he would have used appropriate language to accomplish that purpose, without leaving the executors or trustees to grope their way amid the subtleties and refinements of the law to discover some hypothetical testamentary intention. Had he had such an intention as imputed to him by the solicitors for the respondents, he would naturally (having fixed the meaning of the word " estate " by the broad sense in which he first used it), have limited it by such restrictive words as " my whole estate, exclusive of accumulations down to date of division then directed."

But the solicitors for the respondents attempt to meet this view by insisting that the *corpus* or capital of the .estate must be ascertained as of the date of the death of the testator, or, at the furthest, one year thereafter. In other words, the residuary estate at the present period of division, in contemplation of the testator, was no more than the *corpus* of the entire estate thus ascertained, less the portions excepted therefrom as before mentioned.

In the argument, it was assumed that this contention was sustained by several cases cited under appropriate heads in the respondent's brief.   But a careful examination of the facts in those cases forces the mind to the conclusion that the case in hand clearly falls without the rule of construction laid down and approved in those cited.   This case and those cited differ in their essential facts.   The latter, in each instance, grew out of a gift or bequest of a certain fund in trust to pay the income arising therefrom to certain persons during their lives absolutely, and at the expiration thereof, to pay the

*corpus* to certain other persons in the same manner. The payment of the income was made just as absolute as the payment of the principal. In none of these cases, however, was a definite time prescribed by the testator when the income should begin to accrue or the payment thereof to be made. The courts were, therefore, invoked to fix such time, and in doing so, fixed it, in some instances, at the death of the testator, and, in others, one year thereafter — the period generally allowed for the settlement of estates. The former would seem to be more in harmony with the true intent of the testator than the latter, since it puts into immediate effect the testamentary intention. This rule of construction is certainly a very wise and beneficent one, as it tends, under certain conditions, to prevent a partial abortion of the testator's intent, yet it must not be stretched so far as to destroy the very purpose it was intended to serve. In the present case, the testator did fix the time (and this in the most definite manner possible) at which the income should be payable to his children, namely, as they respectively arrived at their majorities, but he did more than this; he did not leave his children uncared for during their minority, but, on the contrary, made ample specific provision for them during that period. In the light of the parental care manifested by the testator, and the definiteness of the language used, where is the reason for the application of such a principle or rule of construction? What is the ground for a just and equitable collision between the interests of the life beneficiaries and the remaindermen, as measured and determined by the express language of the testator, which calls for the interference of this court?

The next question to be determined is, whether Mrs. Bradford, on her arrival at full age, was entitled to receive the unexpended income which had accrued on her share of the residuary estate from the period of division, that is to say, the income arising from the one equal third part of the entire residuary estate, including the amount over and above that which was actually necessary to raise the widow's annuity.

The testator, in item 4 of his will, among other things, directs that the trustees shall, as his daughters respectively arrive at twenty-one years of age, pay' over to them respectively the income of their respective shares of his estate.   This is the first time that he directs anything to be paid to his daughters directly. . He does not say whether it is income *to* accrue, or income which *has* accrued.   The direction is broad enough to cover both.   It is true that in item 7 of his will, the testator declares that his said executors shall stand possessed of the accumulations of his entire estate and the income thereof for the trusts therein mentioned.   The accumulations here referred to, however, relate to the entire period covered by the lives of the life beneficiaries, but the accumulations or income which we are now considering, relate to a particular part only of that entire period, and to a particular portion of the income. We are, therefore, presented with a case where two intentions appear upon the face of the will; not, however, in material conflict with each other, but the one, a general intent for a general period, and the other, a particular intent for a particular period, and a particular portion of the estate.   In such a case, it is manifestly proper to treat the latter, or particular intent, as an

exception to the former, or general intent. · This question at least involves such a doubt as should be resolved in favor of the life beneficiary, Mrs. Bradford. I, therefore, direct that such unexpended income shall be paid to Mrs. Bradford out of the general funds in the hands of the trustee.

The remaining question is, whether the various sums of money and securities received by the trustee upon the shares of stock of the Rogers Locomotive & Machine Works should be held by it as part of the principal or part of the income of the trust fund.

Thus far, I have not invoked the accumulation clause in aid of the interpretation or construction of the will. It is certain, however, that the testator must have intended it for some purpose, but, unless it is held to be applicable in determining how this large bulk of property remaining in the hands of the trustees shall be disposed of, it would seem that item 7 was idly inserted in the will. To give such an interpretation as would make this section a nullity, would be to violate the fundamental rule of construction, which holds as sacred the full intention of the testator. I am bound, therefore, to treat this provision as of vital force in controlling the distribution of this fund. Accordingly, it remains now to discover the meaning of item 7 of the will. The controlling idea of the testator in the disposition of his property, so far as his two daughters are concerned (after making ample provision for their support and education during minority), was to restrict them to the enjoyment of the income arising from their shares of his residuary estate and its accumulations.

He did not leave this intention to the surmise or conjecture of courts, but expressed it in such clear and explicit language as to leave no room for substantial doubt or controversy. It would be difficult to discover words more clearly indicative of such intent than those which he used in this very section itself. They are as follows: " hereby declare that my said executors shall stand possessed of the accumulations of my residuary estate and the income thereof upon and for the same trusts," etc.

Referring to the 250 shares of stock in the Rogers Locomotive & Machine Works, what are we to understand by the word " accumulations?" What does it embrace? Are not accumulations the yearly earnings and profits of a corporation, in whatever form they may exist, which had not been distributed in dividends among the owners of the stock at the time it went into liquidation? If they are not, it would be impossible to assign a definite meaning to such a term, or to draw the line of distinction between income and accumulations. It is very unreasonable to suppose that the testator, when he used this language, had in mind the period of one year allowed by law for the settlement of estates. To have limited this language to that time would have required express words showing such an intent.

The testator did not leave it to the actions of the executors, to determine what should be embraced in this term, for, by declaring that his executors shall stand possessed of the accumulations, etc., he expressly shows that he designed to include accumulations which were in

the sole custody and control of the corporation as they accrued.

It would be purely a work of supererogation to review the authorities cited as to the meanings of the terms " accumulations " and " income," for the reason that the testator has in his own language practically defined them himself in the sense in which he intends to use them.   It is hardly necessary to add, that a different interpretation, or such an one as insisted upon by the solicitors for the respondents, would have the effect of giving to his daughters absolutely the greater part of his estate, when from the whole context of the will it is manifest that he designed them to be life beneficiaries merely, taking nothing in derogation of the remaindermen.

But it is contended by the solicitors for the respondents, that the appraised value of the stock set apart by the trustees as the fund out of which to raise the widow's annuity, is the basis by which to fix the residuary estate, so far as that stock is concerned, and that the whole of the amount by which its real value overtops its appraised value, must be taken as income belonging to the daughters.   To hold to such a contention would be to make the rights of life beneficiaries and remaindermen alike dependent upon the action of the appraisers. perhaps upon their whim or caprice.   These rights are, however, fixed by the will itself.   It is to that instrument that we must turn in defining the rights and the interests of the beneficiaries.

. It is also contended by the solicitors for the respondents, that 250 shares of stock in the Rogers Locomotive & Machine Works, does not constitute any part of the

testator's residuary estate, as the trustees retained the same in specie down to the present time, as a part of the principal or capital, to raise the widow's annuity.

This stock, according to their contention, is expressly excluded from the residuary estate, because the testator himself declared that his residuary estate should be the whole of his estate, except the portion thereof devised for the special use of his widow and son, and the amount set apart by the trustees sufficient to raise her annuity. This contention must also fail, because the trustees were only authorized to set apart a *sufficient* amount to raise the annuity of $5,000. They had no power to set apart another dollar than that sufficient for this purpose. To concede that they had the power under the will to set apart a greater sum than that, would be equivalent to giving them the power to reduce the residuary estate to such a nominal sum as would not produce sufficient income for the support and education of the children during minority, and in fact to thwart the clear intention of the testator. Therefore, the residuary estate must be the whole of the testator's estate, less the portion devised for the use of the widow and son in the first item of the will, and only such an amount of the capital as would be sufficient to raise the widow's annuity, and it was this which was divided, in the contemplation of the testator, at the period fixed for the division. Therefore, all the divisions of cash and securities in the treasury of the Rogers Locomotive & Machine Works, by whatsoever name called, that have been paid or delivered to the present trustee since February 15, 1893, or may hereafter be paid or delivered, must be treated as capital and not income.